Neubacher *v.* The Indianapolis Union Railway Company *et al.*

Filed March 17, 1893.

———————◆———————

No. 16,086.

NEUBACHER *v.* THE INDIANAPOLIS UNION RAILWAY COMPANY ET AL.

VERDICT.—*Jury Instructed to Return Verdict for Defendant.—When Reversible Error.—Negligence.—When Question of Fact.*—It is reversible error for the court to instruct the jury to return a verdict for the defendant, when the facts established by the evidence are such that to warrant such conclusion by the court, the court would have to weigh the evidence or judge as to the credibility of witnesses; or where the evidence is such that another fair-minded man might have arrived at an adverse conclusion. Where there is evidence from which the jury might have reasonably reached a conclusion favorable to a party, he has the right to have his case submitted to a jury.

From the Marion Circuit Court.

*L. B. Swift,* for appellant.

*A. Baker, E. Daniels, F. Winter* and *J. B. Elam,* for appellees.

OLDS, J.—This is an action brought by the appellant against the appellees for damages resulting from an injury to appellant, alleged to have occurred by reason of the negligence of the appellees, and through no fault of the appellant. A demurrer filed by the Chicago, St. Louis and Pittsburgh Railway Company was sustained to the complaint, and issues were joined between the appellant and the other appellees by answer of general denial to the complaint.

After the appellant had concluded his evidence in chief, and before the appellees with whom issue had been joined, had concluded their evidence, the court, by an instruction, directed the jury to return a verdict for the defendants. The jury, in accordance with the directions of the court, returned a verdict for the defendants, the appellees herein.

The appellant filed a motion for a new trial, which was overruled.

Errors are assigned on the rulings of the court on demurrer and the motion for a new trial.

The only question discussed and presented for our consideration relates to the action of the court in directing the jury to return a verdict for the defendants.

The injury to appellant occurred at a point where the railroad crosses Delaware street, in the city of Indianapolis. This street runs north and south, and the tracks cross it at nearly right angles. At the point of the injury, as shown by a plat in evidence, there are three tracks, numbered from south to north, 4, 5 and 6, used by various railway companies. A short distance to the south of track 4 are three other tracks crossing the street, running together and forming one track a short distance to the west of the street. A short distance to the north of track 6 are two other switch tracks, numbered 7 and 8. On the south side of track 4 there is a walk some twelve

feet wide, leading up from the east to Delaware street, and used by a large number of footmen. There was a very large number of trains crossed this street on these lines of track during each day, probably in all, as shown by the evidence, 200 or more. Appellant had been accustomed to crossing the tracks at this point for a number of years. Delaware street is one of the principal streets in the city, and a large number of people and vehicles cross these lines of track each day.

The court's direction to the jury, as shown by the instruction given, was based solely on the theory that the uncontradicted evidence showed the appellant guilty of gross carelessness, contributing to the injury. If the court was correct in its conclusions drawn from the evidence, the instruction would have been correct, but if there was evidence from which fair-minded men might have reasonably concluded that the appellant used such care as a reasonably prudent man would have done under the circumstances at the time of the injury, then the court erred in directing the jury to return a verdict for the defendants, on the ground that appellant was guilty of contributory negligence. The nature of the crossing, the number of trains daily and hourly passing upon the tracks, and the large amount of travel upon the public street, rendered it a place of great danger, and required of railroad companies using the railroad tracks, and persons familiar with their use, a degree of care corresponding to the danger; but it did not require an abandonment of the use of the street on the part of the public, and the frequency of the trains might at times necessarily involve the necessity of prompt action in crossing after one train had passed to avoid being delayed or injured by another liable to pass in a brief space of time thereafter.

The only witness who testified as to the occurrence, and

as to what the appellant did, was the appellant himself. No person saw him until after the injury. It is contended, on behalf of counsel for appellees, that the undisputed testimony of the appellant himself, according to the construction the counsel place upon it, shows that he came down the walk on the south side of track 4 to the sidewalk on the east side of Delaware street; that, at the time he reached that point, there was a passenger train approaching from the east, running toward the Union Station which was about one block, or 1,200 feet, distant; that the engine of the train was about 15 feet behind him; that, as he came to that point, he was casually looking to the west, and observed the surroundings; that he stopped on the sidewalk and waited until the train on track 4 had passed him, and, as the rear end of the last car in the train had passed about two feet beyond him, he started north across the tracks, without looking for other trains or giving heed to the probable danger; that after the train going west had passed out of the way, or after he had passed over track 4, there was no obstruction to prevent his seeing the train approaching from the west —rear end in front—on track 5, which struck him; that the tracks were six or seven feet apart; that he either did not look, after the train going west had passed, or if he did look he went on regardless of the approaching train, and this must have been substantially the theory taken of the evidence by the trial court in directing the jury, as it did, to return a verdict for appellees.

This theory of counsel for appellees would be well to present to a court or jury on the submission of the cause for a finding or verdict, and it might be a proper conclusion to reach for a court or jury when weighing the evidence and making a finding of the ultimate facts. But in view of the evidence before the jury in this case, it was error for the court to instruct the jury to return a

verdict on that theory, for the court, in doing so, weighed the evidence and passed upon the credibility of the witness, and drew a conclusion not in harmony with the contention of the appellant, and which contention there was some evidence to support, and from which another fair-minded man might have reached an adverse conclusion.

The testimony of the appellant, given on examination in chief, had it stopped at ·that point, might probably have warranted the conclusion that he advanced after the train on track 4 had passed him without being on his guard and looking for other trains, but on cross-examination he testifies that he did look both ways after the train passed, and that he looked to the west after he crossed track 4.

He testifies, that he always looked around for trains; that he looked toward the Union Station, from whence the train came that struck him upon coming up to the sidewalk before the other train passed. It was a crossing at which an ordinance required gates to be kept. He testified' that he saw the gate on the north, and it was open. True, he first answers that it was shut, but immediately corrected himself, and answered that it was open. The jury might, in weighing the testimony, have found it was shut, but they might have found it was open, and for the purpose of the decision of this question, it must be regarded in the light most favorable to the appellant, for if there was evidence from which the jury may have reasonably reached a conclusion favorable to the appellant, he had the right to have the case submitted to the jury.

The accident occurred on the 20th of November, between six and seven o'clock in the evening. The appellant testified, that it was very dark at the time; that there were switch lights between that point and the Union Station; that he thinks the lights were lighted in the station; that there were no electric lights at the Delaware street

crossing; that there was a gas light at the street corner. He says, that he could see down toward the Union Station; though it was very dark, he could see the lights in that direction; that, before the train on track 4 passed him, he looked that way and saw no train; that he looked that way for that purpose, and could see clear into the Union Station, and saw no moving train coming; that when the train had passed him about two feet, he started across, and before he got across track 5 the car struck him; that he just saw a lamp flashing, a man standing on the platform of a passenger car hallooing, and the car struck him; that he did not see the car in advance of its striking him; that the train was running pretty fast; that he did not hear the train coming; that he looked for trains along the tracks; that he looked just as soon as he passed track 4, and that he saw no train.

Under this evidence, the appellant was entitled to have his cause submitted to the jury, under proper instructions, and allow them to determine whether or not he exercised such care as the law exacted of him under such circumstances.

He testifies that he exercised his senses of sight and hearing on every available occasion. The jury may have concluded, that the train was running at a very high rate of speed; that it was not between the crossing and the Union Station when he looked before the train passed him on track 4; that it was not at all imprudent to step across track 4 immediately behind the passing train, and that he saw the gate open, that no flagman was there, and that he looked immediately on crossing track 4, as he swears he did; that the brakeman's lantern was hidden from view, and in the darkness he could not see the moving train at the distance it then was, and the noise of the other train prevented him hearing it, and, by its rapid rate of speed, it ran him down before he could get across the track;

that he exercised the degree of care required of him. See *Prothero* v. *Citizens' St. R. R. Co.*, 33 N. E. Rep. 755, and authorities there cited; *Louisville, etc., R. W. Co.* v. *Schmidt,*, 33 N. E. Rep. 774, and authorities cited in these cases.

We deem it unnecessary to discuss the question as to what the evidence showed in relation to the negligence of the appellees. As the instruction was not based on the theory that there was no evidence showing any negligence on their part, and we think there was sufficient evidence to require the submission of the cause to the jury, the court erred in directing the jury to return a verdict for the appellees.

Judgment reversed, with instructions to grant a new trial.

Filed March 17, 1893.