ATTORNEYS FOR APPELLANT
Thomas D. Collignon
Patrick J. Dietrick
Michael B. Knight
Indianapolis, Indiana

William W. Wilkins
Dennis J. Lynch
Travis C. Wheeler
Columbia, South Carolina

ATTORNEYS FOR APPELLEE
Mark J.R. Merkle
Greg A. Small
Indianapolis, Indiana



FILED
Jul 31 2012, 12:05 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1201-CT-4

JAMES C. PURCELL,

*Appellant (Plaintiff below),*

v.

OLD NATIONAL BANK,

*Appellee (Defendant below),*

Appeal from the Marion Superior Court, No. 49D07-0408-CT-001517
The Honorable Gerald Zore, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1005-CT-482

**July 31, 2012**

**David, Justice.**

This case involves a trial court's issuance of a directed verdict under Trial Rule 50(A). The issue presented in this case is whether the trial court abused its discretion under Rule 50(A) in its determination that the evidence presented by Purcell was insufficient to merit presentation of the evidence to the jury. We hold that the trial court properly exercised its discretion and affirm the ruling of the trial court in all respects.

**Facts and Procedural History**

In 1998, Richard Knight and James Purcell established Midwest Fulfillment, a company that provided order fulfillment services for various companies. In late 2001, Joseph Stein joined Midwest Fulfillment as a ten percent shareholder and Chief Financial Officer. In June 2002, the parties executed a stock redemption agreement, in which Purcell sold his majority interest in Midwest Fulfillment to Knight and Stein. The redemption agreement called for payments to Purcell of $1.2 million in four annual installments and monthly interest payments on the outstanding balance. Furthermore, the redemption agreement gave Purcell a security interest in Midwest Fulfillment's assets and required Midwest Fulfillment to provide Purcell with monthly and yearly financial statements. Under the redemption agreement, if Midwest Fulfillment's assets-to-liabilities ratio (or "current ratio") fell below a certain level for three consecutive months, Midwest Fulfillment would be in default and Purcell would gain 100% ownership of the company.

In late 2002, Midwest Fulfillment applied for a line of credit with Old National Bank. Prior to issuing the loan, Old National Bank (Old National), through loan officer Joseph Howarth, required Purcell to sign a subordination agreement that made Purcell's security interest in Midwest Fulfillment's assets subordinate to Old National's security interest in those assets. Purcell signed the subordination agreement on December 30, 2002. Both Purcell and Old National received monthly financial statements prepared by Midwest Fulfillment.

In February and March 2003, Midwest Fulfillment's current ratio fell below the level specified in the redemption agreement. A third month of the current ratio falling below 1.0 as specified in the redemption agreement would be a default and allow Purcell to exercise his rights under the redemption agreement, subject to the overriding obligations of the subordination agreement. Midwest Fulfillment's April balance sheet included a line item for income designated as "Misc. Billing to Customers" in the amount of $613,461.19. The April profit and loss statement reported Midwest Fulfillment's net ordinary income as $695,210.44, which prevented a technical default of the redemption agreement.

Stein later admitted that this figure was based on invoices to Midwest Fulfillment's landlord for work that was neither ordered nor completed, and that the April 2003 balance sheet

given to Purcell was not intended to reflect an accurate financial picture for Midwest Fulfillment. But for the "Misc. Billing to Customers" line item, the current ratio would have been below the designated level for three consecutive months, and Purcell would have had the right to take over the company.

By July 2003, Midwest Fulfillment was going out of business. The landlord chained the doors, and without a space to conduct business, Midwest Fulfillment ceased operations and turned remaining assets over to Old National. Old National liquidated those assets, but that was still insufficient to pay off the loans.

In a proceeding separate from the instant case, Purcell sued Midwest Fulfillment. During that lawsuit, an interrogatory was posed to Stein asking for an explanation of several balance sheet items between the months of February and June of 2003, one of which was the "Misc. Billing to Customers" line item in the April 2003 balance sheet. Under oath, Stein answered generally, "[a]ll instances were adjustments made to the receivable from Meridian Properties, Inc. and /or Sharp Companies done in accordance with instruction from Joe Howarth at Old National Bank to remain in compliance with the loan documents between Midwest and Old National Bank." More specifically, Stein had noted in the previous answer that "Midwest was accrual basis . . . [and] that the receivable due from Meridian Properties, Inc. and/or Sharp Companies was included as income. The inclusion of this receivable as income was done at the instruction of Joe Howarth at Old National Bank."

Purcell brought claims against Old National for negligence, constructive fraud, actual fraud, deception, and tortious interference with a contract. The matter proceeded to trial, and the evidence at trial included Stein's sworn interrogatory response from the Midwest Fulfillment litigation. Plaintiff took the position that the interrogatory answer by Stein was proof that Howarth, on behalf of Old National, directed Stein to knowingly make the false statements. However, during their trial testimony in the instant case, both Stein and Howarth denied that the April 2003 balance sheet was falsified at Howarth's direction. Specifically, Stein disavowed his response to interrogatory in the separate case; Stein explained that it was his decision to include the inaccurate $613,461 amount under "Misc. Billing to Customers" and that Joe Howarth did not instruct Stein to make the entry. In fact the trial testimony was stated clearly:

3

Q: Did Mr. Howarth direct you to make that entry in the April 2003 financial statement under Miscellaneous Billing to Customers?

A: He did not.

.　.　.

Q: Now, the next line in your response says: "The inclusion of this receivable as income was done at the instruction of Joe Howarth of Old National Bank." . . .

.　.　.

A: Mr. Howarth did not instruct me to do that.

At the close of Purcell's case-in-chief, the trial court granted Old National's motion for judgment on the evidence on all claims including finding that Old National owed no duty to Purcell.[1] The trial court denied Old National's request for statutory attorney fees. The Court of Appeals affirmed the trial court's ruling as to the issues of duty and attorney's fees but reversed the trial court's judgment on the evidence as to Purcell's claims of fraud, deception, and tortuous interference with contract based on the interrogatory answer in the other litigation. We granted transfer.

## I. Trial Rule 50(A) Sufficiency Requirement

The trial court granted Old National's motion for judgment on the evidence pursuant to Indiana Trial Rule 50(A). The Court of Appeals reversed, finding that Stein's interrogatory answer constituted sufficient evidence to preclude an entry of judgment on the evidence, despite evidence to the contrary at trial, including an adamant denial from Stein that the interrogatory was incorrect. Purcell v. Old Nat. Bank, 953 N.E.2d 527, 532 (Ind. Ct. App. 2011).

This Court reviews a trial court's issuance of judgment on the evidence by applying the same standard that the trial court uses, looking only to the evidence and reasonable inferences most favorable to the non-moving party. See Smith v. Baxter, 796 N.E.2d 242, 243 (Ind. 2003);

---

[1] Although the trial court's rationale revolved around duty, only Purcell's claims of negligence and constructive fraud require the plaintiff to make a showing that Old National owed a duty to Purcell, while the remaining claims are intentional torts. For this reason, the validity of the trial court's Rule 50(A) determination for fraud, deception, and tortious interference will be analyzed separately from the judgment as to negligence and constructive fraud.

4

American Optical Co. v. Weidenhamer, 457 N.E.2d 181, 183 (Ind. 1983). Thus, the Court turns to the text of Trial Rule 50, which provides the standard for judgment on the evidence.

Trial Rule 50(A) states in relevant part: "Where all or some of the issues in a case tried before a jury . . . are not *supported by sufficient evidence* . . . the court shall withdraw such issues from the jury and enter judgment thereon . . . A party may move for such judgment on the evidence." Ind. Trial Rule 50(A) (emphasis added). The purpose of a party's motion for judgment on the evidence under Rule 50(A) is to test the sufficiency of the evidence presented by the non-movant. Nesvig v. Town of Porter, 668 N.E.2d 1276, 1282–83 (Ind. Ct. App. 1996).

In American Optical, this Court articulated the means by which a trial court may determine whether evidence is "sufficient" to survive a motion for judgment on the evidence. In that case, this Court stated that determining whether evidence was sufficient "requires both a quantitative and a qualitative analysis." American Optical, 457 N.E.2d at 184. Evidence fails quantitatively only if it is wholly absent; that is, only if there is no evidence to support the conclusion. Id. If some evidence exists, a court must then proceed to the qualitative analysis to determine whether the evidence is substantial enough to support a reasonable inference in favor of the non-moving party. See Dettman v. Sumner, 474 N.E.2d 100, 104–105 (Ind. Ct. App. 1985) (discussing and applying the two-part analysis of American Optical).

"Qualitatively, . . . [evidence] fails when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of a witness or because the intended inference may not be drawn therefrom without undue speculation." American Optical, 457 N.E.2d at 184. The use of such words as "substantial" and "probative" are useful in determining whether evidence is sufficient under the qualitative analysis. Id. Ultimately, the sufficiency analysis comes down to one word: "reasonable." See, e.g., Raess v. Doescher, 883 N.E.2d 790, 793 (Ind. 2008) ("A motion for judgment on the evidence should be granted only when there is a complete failure of proof because there is *no substantial evidence or reasonable inference* supporting an essential element of the claim." (emphasis added) (citation and internal quotation marks omitted)); Ross v. Lowe, 619 N.E.2d 911, 914 (Ind. 1993) ("If there is any probative evidence or reasonable inference to be drawn from the evidence in favor of the plaintiff or if there is evidence allowing reasonable

5

people to differ as to the result, judgment on the evidence is improper."); <u>Teitge v. Remy Const. Co., Inc.</u>, 526 N.E.2d 1008, 1010 (Ind. App. Ct. 1988) ("[J]udgment on the evidence is proper only where there is a lack of evidence of probative value upon one or more of the factual issues necessary to support a verdict, and no reasonable inference in favor of the plaintiff can be drawn from this evidence.").

Purcell's primary evidence in support of his allegations of fraud, deception, and tortious interference with contract, which require proof of intentional misrepresentation or an inducement of a breach of contract, are Stein's statements made in response to interrogatories served in a separate lawsuit. Those statements were later explained and disavowed at trial.[2] These responses indicated that entries made by Stein to Midwest Fulfillment's balance sheets between February and June 2003 were made at the instruction of Joe Howarth at Old National, including the line item "Misc. Billing to Customers." Based on these responses, the quantitative element of the sufficiency inquiry is met, because there exists some evidence presented at trial that may, when viewed in isolation, lend support to Purcell's desired conclusion that Old National had a hand in Stein's preparation of the Midwest balance sheets.

However, a reading of Stein's responses in context with his testimony at trial leads to the conclusion that Purcell's evidence does not meet the qualitative element of the sufficiency analysis. In reality, nowhere in Stein's interrogatory does he state that Old National told him to make fraudulent entries. Stein's trial testimony explains that Purcell's reading of the response is a misunderstanding, and Stein flat-out denies that the bank directed him to make fraudulent entries on the balance sheets. In fact, Stein's interrogatory response states that all of the adjustments to receivable entries inquired upon by the interrogatory were made at the instruction of Old National, not just the "Misc. Billing to Customers" line item that contained the fraudulent amount.

---

[2] Old National conceded at oral argument that Stein's interrogatory responses were entered as substantive evidence at trial pursuant to evidentiary rule 801(d)(1)(A). However, the Court has some reservations as to whether a non-party's disavowed interrogatory response may be admitted as substantive evidence as a prior inconsistent statement made "at a trial, hearing or other proceeding, or in a deposition." Evid. R. 801(d)(1)(A). Thus, it is unclear whether these interrogatory responses are more properly categorized as merely impeaching, rather than substantive evidence. That said, the interrogatory responses were entered as evidence without objection, and the issue is not squarely before the Court and need not be addressed in the instant case.

Moreover, the response accentuates that Old National gave the instruction "to remain in compliance with the loan documents between Midwest and Old National Bank." This is certainly a reference to the requirement that Stein provide Old National with Midwest's balance sheets and financial information to remain in compliance with the company's loan requirements. And Stein testified at trial that he provided the bank with the same balance sheets that were provided monthly to Purcell. Purcell's reading of the interrogatory response would require the unreasonable inference that Old National instructed Stein that "compliance with the loan documents" mandated the inclusion of fraudulent entries to balance sheets that would be submitted to the bank itself; this is absurd. Whatever perceivable conflict that may exist between Stein's interrogatory response and his trial testimony, it is minimal, at best. When Stein's interrogatory responses are viewed as a whole and in conjunction with his trial testimony, the import is that this evidence—standing alone—is insufficient the support Purcell's intentional tort claims under our qualitative analysis.

By its express language, Rule 50 acknowledges that a party must do more than simply present *some* evidence; in addition, that evidence must also be *sufficient* evidence. Unlike a motion for summary judgment under Rule 56, the sufficiency test of Rule 50(A) is not merely whether a conflict of evidence may exist, but rather whether there exists probative evidence, substantial enough to create a reasonable inference that the non-movant has met his burden.[3] The crux of the qualitative failure analysis under Rule 50(A) is "whether the inference the burdened party's allegations are true may be drawn without undue speculation." Dettman, 474 N.E.2d at 105 (citing American Optical, 457 N.E.2d at 183–84). At the close of Purcell's case-in-chief, no evidence had been presented showing that Old National specifically directed Stein to include the fraudulent entry as Purcell alleges. The only evidence[4] presented linking Old National to the fraudulent entry complained of is a generalized, ambiguous interrogatory

---

[3] Compare Indiana Rules of Procedure, Trial Rule 56 and Indiana Rules of Procedure, Trial Rule 50.

[4] Purcell's briefs also reference evidence presented at trial to which the trial court sustained a hearsay objection. Purcell notes that this evidence was never formally stricken and remained in the record; however, the Court has little doubt that at the time the trial judge made the Rule 50(A) determination, the trial judge would have understood that this hearsay was not cognizable evidence. For, "a trial judge is presumed to know the intricacies and refinements of the rules of evidence and that he sifts the evidence and weighs it in the light of his legal experience and expertise. He is thus able to separate the wheat from the chaff, ignoring the extraneous, the incompetent and the irrelevant . . . ." King v. State, 155 Ind. App. 361, 366–67, 292 N.E.2d 843, 846–47, (Ind. Ct. App. 1973).

response, later explained at trial with the aid of direct and cross-examination. Without more, the Court cannot say that the trial court abused its discretion in determining that Purcell's inference of fraud could not be found by a reasonable jury without engaging in undue speculation.

Our decision does not alter the critical, invaluable, and constitutionally protected role of the jury in Indiana's system of jurisprudence. It remains true that a court is not free to engage in the fact-finder's function of weighing evidence or judging the credibility of witnesses to grant judgment on the evidence, where fair-minded men may reasonably come to competing conclusions. C.f. Neubacher v. Indianapolis Union Ry. Co., 33 N.E. 798, 799 (Ind. 1893). Indeed, the function of weighing evidence and judging witness credibility is one which has always been within the purview of the jury. That said, it is equally true that judges, at times, may play a role in the ultimate determination of cases such as through judgment on the evidence or summary judgment. This process helps to ensure the proper administration of our laws with the added benefit of preserving judicial economy. Where, in a case such as this, the plaintiff fails to present sufficient, probative evidence as to a necessary element of a claim, the trial judge is within his or her discretion to issue judgment on the evidence pursuant to Rule 50(A).

## II. Duty (Negligence & Constructive Fraud)

In addition to agreeing with the trial court that Purcell did not present sufficient evidence to sustain his intentional tort claims discussed above, this Court also agrees with the trial court's determination that Old National did not owe a duty to Purcell under these circumstances.[5] Whether a defendant owes a duty of care to a plaintiff is a question of law, which the Court reviews de novo. See Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991). To establish a negligence claim, a plaintiff must establish three elements, one of which is that the defendant owed a duty of care to the plaintiff. Pfenning v. Lineman, 947 N.E.2d 392, 398 (Ind. 2011). Similarly, a plaintiff must establish that a duty of care exists to prevail on a claim of constructive fraud. Rice v. Strunk, 670 N.E.2d 1280, 1284 (Ind. 1996). "Absent a duty, there can be no

---

[5] The Court of Appeals arrived at the same conclusion in affirming the trial court's decision with regard to duty.

breach, and therefore, no recovery for the plaintiff in negligence." Pfenning, 947 N.E.2d at 398 (citation omitted).[6]

Old National asks that the Court adopt a "no customer, no duty" rule, which recognizes that a bank should not owe a duty of care to an "undefined and unlimited category of strangers who might interact with [the bank's] customer." Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 226 (4th Cir. 2002); see also Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 435 (7th Cir. 1996) (holding that under Illinois law, a "lender owes no duty to protect third parties from the credit risk of an insolvent borrower"). Old National contends that because Purcell was not a customer and had no banking relationship with Old National, that no duty can be found. This Court, like the Court of Appeals, finds no occasion to validate such a blanket rule in this case. See Purcell v. Old Nat. Bank, 953 N.E.2d 527, 531 (Ind. Ct. App. 2011). And the Court agrees with the basic rationale of the Court of Appeals that under these circumstances no duty of care was owed to Purcell. Therefore, the trial court's finding that Purcell's negligence and constructive fraud claims fail for want of duty is affirmed.

### III. Attorney's Fees

Finally, Old National argued on appeal that the trial court erred in declining to award attorney's fees to Old National following its ruling on its successful motion for judgment on the evidence. A trial court may grant an award of attorney's fees if a litigant "continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless." Ind. Code § 34-52-1-1(b)(2) (2008). The trial court's decision to award attorney's fees under § 34-52-1-1 is subject to a multi-level review: the trial court's findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed de novo. R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 457 (Ind. 2012). Finally, the trial court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion. Id. A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. Id.

---

[6] Likewise, absent the existence of a duty, a plaintiff cannot recover under a claim of constructive fraud.

9

Old National contends that Purcell continued to litigate his claims despite knowing that they were clearly groundless. A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party. Emergency Physicians of Indianapolis v. Pettit, 714 N.E.2d 1111, 1115 (Ind. Ct. App. 1999), adopted in part, 718 N.E.2d 753, 757 (Ind. 1999). Although the facts presented at trial were insufficient to survive judgment on the evidence, it remains true that *some* facts were presented in Purcell's case-in-chief. As discussed above, it is likely that Purcell satisfied the quantitative aspect of the sufficiency analysis by presenting facts that potentially lend support to his conclusion. Thus, it cannot be said that "*no facts*" existed in support of his legal claim at the time Purcell went to trial. Based on this conclusion and on the strong deference afforded to the trial court in these matters, we hold that the trial court did not abuse its discretion in denying Old National's request for costs and attorney's fees.

## Conclusion

The Court finds that there was not sufficient evidence presented in this case to withstand a motion for judgment on the evidence on Purcell's claims of fraud, deception, and tortious interference with contract. Accordingly, the trial court's grant of Old National's motion under Rule 50(A) is affirmed. Furthermore, Purcell's relationship with Old National as a subordinate creditor did not give rise to a duty of care required to prove Purcell's claims of negligence and constructive fraud, and the trial court did not abuse its discretion by denying Old National's request for costs and attorney's fees.

Sullivan, and Massa, JJ., concur

Rucker, J., dissents in part and concurs in result in part with separate opinion in which Dickson, C.J., concurs.

10

**Rucker, Justice, concurring in result in part and dissenting in part.**

I respectfully dissent to Section I of the majority opinion. The majority affirms the trial court's grant of Old National's motion for judgment on the evidence. But with respect to actual fraud and tortious interference with contract it does so on grounds the trial court did not reach, and more importantly conflicting inferences from the evidence before the jury precludes judgment on the evidence for these two claims.

This case proceeded to trial on four theories: negligence, constructive fraud, actual fraud, and tortious interference with contract. After the close of plaintiff's case-in-chief, Old National filed a Motion for Judgment on the Evidence. Appellant's App. at 159. Although the Motion itself is not included in the record before us, arguing in favor of the Motion, Old National noted plaintiff's various claims and contended "there's a complete absence of proof on a required element to establish plaintiff's claim." Appellant's App. at 159. After entertaining arguments of counsel, the trial court granted Old National's Motion on all claims on the sole ground that "the bank had no duty to [Purcell]." Appellant's App. at 168.

On review the Court of Appeals agreed with the trial court that Old National owed no duty to Purcell because, according to the court, Purcell was merely a subordinate creditor to Old National. See Purcell v. Old Nat'l Bank, 953 N.E.2d 527, 531 (Ind. Ct. App. 2011). However the court correctly pointed out that the question of duty was relevant only in the context of Purcell's negligence and constructive fraud claims. And since there was no duty both claims fail. See id. at 531 n.1. The majority apparently endorses this aspect of the Court of Appeals opinion. Slip op. at 9. However, the majority proceeds to address an issue the trial court did not decide, namely: whether there was sufficient evidence to support Purcell's two remaining claims.

I agree with the majority that in reviewing a challenge to a ruling on a motion for judgment on the evidence our standard of review is the same as it is for the trial court. N. Ind. Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 466-67 (Ind. 2003). Judgment on the evidence is proper only "[w]here all or some of the issues . . . are not supported by sufficient evidence." Ind. Trial

Rule 50(A). Here the majority goes to some length explaining the "means by which a trial court may determine whether evidence is 'sufficient' to survive a motion for a judgment on the evidence." Slip op. at 5. The problem however is that in this case the trial court made no such determination.

It is true that in certain contexts an appellate court may affirm a trial court's judgment on theories other than those adopted by the trial court. See, e.g., Coleman v. State, 946 N.E.2d 1160, 1168 (Ind. 2011) (admission of evidence); Estate of Mintz v. Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 999 (Ind. 2009) (grant of summary judgment); Kimberlin v. Delong, 637 N.E.2d 121, 128 (Ind. 1994) (amendment of pleadings); Runde v. Vigus Realty, Inc., 617 N.E.2d 572, 575 (Ind. Ct. App. 1993) (dismissal of complaint); Conway v. Evans, 549 N.E.2d 1092, 1094-95 (Ind. Ct. App. 1990) (refusal to instruct jury). And of course "where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings." Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998). But neither of the foregoing circumstances is present here. Thus, it appears to me that a review of the trial court's grant of a motion for judgment on the evidence should be confined to the law applied by the trial court, and this Court should evaluate only the merits of claims reached by the trial court. See State v. Econ. Freedom Fund, 959 N.E.2d 794, 801 (Ind. 2011) (declining to affirm trial court judgment on alternate theory). Because lack of duty – the only ground on which the trial court relied in granting Old National's motion for judgment on the evidence – has no bearing on Purcell's actual fraud and tortious interference claims, I would reverse the trial court's judgment with respect to these claims and remand for consideration by a jury.

Further, I disagree with the majority's conclusion that the record before us supports the grant of a motion for judgment on the evidence with respect to Purcell's actual fraud and tortious interference claims. To sustain a judgment for defendant on the evidence, the evidence must be without conflict and susceptible to but one inference in favor of the moving party; if there is *any* inference or legitimate inference therefrom tending to support at least one of plaintiff's allegations, a directed verdict should not be entered. See Bonnes v. Feldner, 642 N.E.2d 217, 220 (Ind. 1994). Stated slightly differently, "If there is any probative evidence or reasonable

2

inference to be drawn therefrom or if there is evidence which would allow reasonable people to differ as to the result, judgment on the evidence is improper." Wellington Green Homeowners' Ass'n v. Parsons, 768 N.E.2d 923, 925-26 (Ind. Ct. App. 2002). Based on the conflicting evidence before the jury in this case, reasonable people could (and in fact do) differ as to whether Old National or its agent Howarth induced Stein to include the false income figure on the April 2003 balance sheet. As the Court of Appeals observed:

> [T]here are questions of fact whether [Old National] intentionally induced MWF to breach the contract with Purcell by falsifying accounting figures in order to prevent Purcell from redeeming his interest in MWF, and whether [Old National] had a justification for its alleged actions. Because there was evidence [Old National]'s representative Howarth told Stein to falsify the accounting figures for April 2003, judgment on the evidence was improper.

Purcell, 953 N.E.2d at 532. I agree. The evidence in favor of Purcell's claims is not overwhelming. But there are competing inferences to be drawn from the evidence properly presented to the jury. And it is certainly enough to withstand a motion for judgment on the evidence. On the question of actual fraud and tortious interference with contract this case should be remanded for trial. I therefore dissent to Section I of the majority opinion. With respect to Sections II and III, I concur in result.

Dickson, C.J., concurs.