## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 11 2015, 10:03 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Nicholas T. Otis | Tula Kavadias |
| Newby, Lewis, Kaminski, & Jones, LLP | Kavadias & Associates, P.C. |
| LaPorte, Indiana | Crown Point, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hanover Community School Corporation, | August 11, 2015 |
| *Appellant*, | Court of Appeals Case No. 45A03-1410-PO-344 |
| v. | Appeal from the Lake Superior Court |
| L. K., | The Honorable John M. Sedia, Judge |
| *Appellee*. | Cause No. 45D01-1407-PO-55 |

**Brown, Judge.**

Hanover Community School Corporation ("Hanover") appeals from the trial court's order awarding attorney fees in favor of L.K.[1] The parties present several issues, which we consolidate and restate as whether the trial court abused its discretion in awarding attorney fees of $2,000 to L.K.[2] We affirm in part and remand.

## Facts and Procedural History

On May 16, 2014, E.H., an employee of Hanover, was providing instruction to L.K.'s seven-year-old son, C.K., in L.K.'s home. As stated in a police report taken regarding the incident giving rise to this litigation (the "Police Report"), while E.H. was conducting class with C.K.,

> [C.K.] became very aggressive with [E.H.] and began throwing small items at her. When she took a small metal object away from him after he threw it at her and hit her with it, he went to the kitchen and grabbed a large butcher knife and verbally stated that he was going to kill her while waving it in the air.

---

[1] In its order, the court observed that L.K. "averred that the filings in this matter may have an adverse affect [sic] on her immigration status" and "to the extent that any part of the record of this case that is not already deemed confidential pursuant to statute or rule, it would not be prejudicial to either party to order the entire file be made confidential and not available for public access," and it ordered the entire case file sealed. *See* Ind. Administrative Rule 9(D)(1) (2014) ("A court record is accessible to the public except as provided in sections (G) and (H) of this rule, or as otherwise ordered sealed by the trial court.") (subsequently amended by Order Amending Indiana Administrative Rules, No. 94S00-MS-57 (Sep. 8, 2014) (eff. Jan. 1, 2015)). On October 9, 2014, L.K. filed a Request to Maintain Exclusion of Confidential Documents/Information from Public Record, which this court granted on October 14, 2014. We accordingly refer to the Appellee by her initials in both the caption and body of this opinion.

[2] We observe that on October 31, 2014, L.K. filed in the trial court a motion for appellate attorney fees. At that time, however, this court had already acquired jurisdiction because the notice of completion of clerk's record had been filed on October 15, 2014. *See* Ind. Appellate Rule 8 ("The Court on Appeal acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary."). The record does not reveal that L.K. filed a motion seeking appellate attorney fees in this court.

> While [C.K.] waved around the knife and threatened [E.H.] the mother, [L.K.] (involved) stood off to the side speaking in Greek, but made no attempt to disarm [C.K.]. It is unknown what she said. After waving the knife and making the threat [C.K.] put the knife in the sink, at which time the Mother said "good choice".
>
> It was at this time that [E.H.] became worried for her safety, gathered her belongings and left the residence.
>
> [E.H.] returned to the school to make an official statement to the Principal. Principal Snedden contacted the School Superintendent and Cedar Lake Police Department, to file an official report as part of their standard procedure. She also stated she was going to contact the Department of Child Services.

Appellant's Appendix at 15. The Police Report indicated that police later made contact with L.K., who "stated that [E.H.] provoked her son, and accused [E.H.] of taking things from her home in the past. [L.K.] also stated that she has been unhappy with [E.H.'s] treatment of [C.K.], and in her country she would be in her rights to kill her." *Id.*

[3] After receiving a copy of the Police Report, E.H. became upset and concerned for her safety. Based on E.H.'s concern, on May 29, 2014, Hanover filed a Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against an Employee (the "Petition") against L.K. under the provisions of the Workplace Violence Restraining Orders Act (the "WVROA") and attached the Police Report to the Petition. On the same day, the trial court entered an order to show cause and temporary restraining order and set the matter for hearing on June 26, 2014.

[4] On June 25, 2014, L.K. filed a Motion for Change of Venue from Judge and in the Alternative for Transfer to Lake Superior Court, Domestic Relations

Division. As scheduled, the trial court held a hearing on June 26, 2014, after which it granted L.K.'s motion for change of venue from judge. The parties stipulated to the appointment of Judge Sedia, who scheduled a hearing on the Petition for July 22, 2014. On June 30, 2014, counsel for L.K. contacted counsel for Hanover, and requested that the Petition be dismissed. Counsel for Hanover refused.

On July 18, 2014, Hanover filed a motion to dismiss the Petition, which the trial court granted on July 21, 2014. On July 21, 2014, after Hanover's motion to dismiss was granted, L.K. filed an objection to the court's order of dismissal in which she sought sanctions and attorney fees, and, on July 23, 2014, the trial court scheduled a hearing on that motion for September 2, 2014. Hanover filed its response to L.K.'s objection to dismissal on July 23, 2014. On September 2, 2014, the trial court conducted a hearing on L.K.'s motion objecting to the order of dismissal, in which the parties agreed to summary proceedings, and at which L.K. submitted a fee affidavit of her counsel. On September 3, 2014, Hanover filed its response to L.K.'s request for sanctions and attorney fees. On September 4, 2014, the trial court entered its order requiring Hanover to pay L.K. attorney fees in the amount of $2,000 for fees incurred after the date of June 30, 2014, pursuant to Ind. Code § 34-52-1-1(b)(2), the general recovery rule. On November 18, 2014, the trial court granted Hanover's motion to stay enforcement of the judgment pending appeal.

*Discussion*

The issue is whether the trial court abused its discretion in awarding attorney fees to L.K. The court entered its award of attorney fees pursuant to Ind. Code § 34-52-1-1(b)(2), which provides that "[i]n any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party . . . continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless . . . ." A claim or defense is frivolous if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, *cert. denied*, 134 S. Ct. 952 (2014). A claim or defense is unreasonable if, based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation. *Id.* A claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the party. *Id.*

The trial court's decision to award attorney fees under Ind. Code § 34-52-1-1 is subject to a multi-level review: the trial court's findings of fact are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo*. *GEICO Gen. Ins. Co v. Coyne*, 7 N.E.3d 300, 305 (Ind. Ct. App. 2014)

(citing *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 843 (Ind. 2012)), *trans. denied*. Finally, the trial court's decision to award attorney fees and any amount thereof is reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. *Id.*

[8]  Hanover filed the Petition under the provisions of the WVROA, which is codified at Ind. Code §§ 34-26-6. Ind. Code § 34-26-6-6 governs the authority of an employer to file a petition under the WVROA and provides:

> An employer may seek a temporary restraining order or injunction on behalf of an employee to prohibit further violence or threats of violence by a person if:
>> (1) the employee has suffered unlawful violence or a credible threat of violence from the person; and
>> (2) the unlawful violence has been carried out at the employee's place of work or the credible threat of violence can reasonably be construed to be carried out at the employee's place of work by the person.

Ind. Code § 34-26-6-7 governs the filing of a petition under the WVROA and provides:

> A plaintiff may obtain a temporary restraining order under section 6 of this chapter by filing a petition for an injunction if the plaintiff:
>> (1) files an affidavit that shows, to the satisfaction of the court, reasonable proof that an employee has suffered unlawful violence or a credible threat of violence by the defendant; and
>> (2) demonstrates that great or irreparable harm has been suffered by the employee or will be suffered by the employee.

At the outset, we note that both parties make arguments regarding the facts the court weighed in reaching its decision. Hanover argues that there was an absence of admissible evidence entered supporting the trial court's findings. As noted above, the September 2, 2014 hearing was conducted in summary fashion and the court based its ruling primarily on what was discussed at the hearing. Our review of the record reveals that Hanover did not object to the summary form of the proceedings. Rather, when asked by the court whether Hanover had a problem with proceeding summarily, Hanover's counsel responded, "No, your Honor, that's how I intended we would proceed." Transcript at 20. Failure to make a contemporaneous objection before the trial court results in a waiver of the issue on appeal. *Neese v. Kelley*, 705 N.E.2d 1047, 1050 (Ind. Ct. App. 1999) (holding that failure to make a contemporaneous objection to a court holding summary proceedings results in waiver of that issue upon appeal). Moreover, Hanover's argument is unpersuasive based upon the invited error doctrine. *See Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 695 (Ind. Ct. App. 2008) ("A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct.") (citing *White v. State*, 687 N.E.2d. 178, 179 (Ind. 1997)), *trans. denied*. Because Hanover agreed to the summary proceedings, we conclude that any error made by the court in entering findings based upon the arguments heard at the September 2 hearing was invited error, which "is not subject to review by this court." *Id.*

[10] Similarly, L.K. challenges the evidence discussed at the September 2, 2014 hearing and used by the trial court in deciding whether an award of attorney fees was appropriate. Specifically, she alleges that it was error for the court to rely on the Police Report because it was not offered into evidence or authenticated. For the same reasons as discussed above, we conclude that L.K. has waived this challenge by failing to contemporaneously object to the court's decision to proceed summarily or the court's statement that it intended to use the Police Report in deciding whether the Petition was frivolous, unreasonable, or groundless, and that, waiver notwithstanding, the invited error doctrine precludes L.K.'s evidentiary challenge.

[11] Next, Hanover argues the evidence does not support the findings, and, more specifically, challenges the findings in Paragraphs 8 and 10. In part, those Paragraphs provide:

> 8. An examination of the Petition and attachments demonstrate to the Court that the only act that could be construed to be a credible threat of violence suffered by [E.H.] was [L.K.]'s son picking up a butcher knife and waving it at her. [L.K.]'s statement purportedly made to the police that: ". . . in her country she would be in her rights to kill her . . . .", meaning [E.H.], cannot be construed to be a threat of violence to [E.H.], since it was not communicated to [E.H.] by [L.K.]. . . .

> * * * * *

> 10. Here, Hanover was confronted with an employee who was quite justifiably upset at an incident in which she was confronted with a child holding a butcher knife in front of her. It cannot be said, under the totality of the circumstances, including the law and facts known at the time, for Hanover to seek a Workplace Violence Restraining Order was frivolous, unreasonable, or groundless: [E.H.] was employed [by] Hanover and engaged in the duties of her employment

at a workplace, albeit [L.K.]'s home, where she received a credible threat of violence. This was supported by her statement to the police. However, as time passed, [L.K.] hired counsel, who had conversations with the attorney and staff of Hanover about the incident. It soon became obvious that it was the child, and not [L.K.], who waved the butcher knife at [E.H.], and that [L.K.]'s statement to the police, even if not misinterpreted, was not directed at [E.H.] as a threat. It was at this point that Hanover's claim became unsupportable on its merits by any good faith and rational argument. From an examination of the timeline of events, as illustrated by [L.K.]'s counsel's itemized billing, the time that Hanover's action became unsupportable on its merits by any good faith and rational argument was after June 30, 2014, when [L.K.]'s counsel asked Hanover's counsel for the second time to dismiss the action, which Hanover ultimately did nearly a month later, during which time [L.K.][] incurred substantial attorney fee expenses necessary to defend the case.

Appellant's Appendix at 61-62.

[12] The record reveals that, in the Petition, Hanover alleged that "[L.K.] told police officers that [E.H.]'s conduct would result in [E.H.]'s death in [L.K.]'s home country." *Id.* at 10. This allegation in the Petition, on the basis of which the trial court granted a temporary restraining order, does not align exactly with the statements contained within the Police Report considered by the court in issuing its September 4, 2014 order. As written in the Police Report, L.K. stated that she would be "in [her] rights to kill [E.H.]" if she were in her home country, *id.* at 16, which L.K. asserts was written into the police report due to the police officer's "difficulty understanding her speak English

with a Greek accent."[3]  Transcript at 23.  On at least three occasions, counsel for L.K. spoke to Hanover's counsel and "explained to him all of the facts and circumstances of the case" and asked him to dismiss the Petition on the basis that L.K.'s statement to the police was not a credible threat of violence.  *Id.* at 29.  Based upon the record, we cannot say that it was clearly erroneous for the court to find that the statement made by L.K. was not directed at E.H. as a threat, and that Hanover became aware of this no later than June 30, 2014 when L.K.'s counsel conversed with Hanover's counsel for a second time explaining the circumstances of the case and requesting that the Petition be dismissed.

[13]  We next turn to whether the trial court erred in concluding that Hanover's claim became frivolous, unreasonable, or groundless after June 30, 2014, which conclusion we review *de novo*.  As noted above, the WVROA requires that the employee for whom the restraining order is sought must have suffered unlawful violence or a credible threat of violence.  I.C. § 34-26-6-6(1).  Hanover asserts that the statement made by L.K. to the police constituted a credible threat of violence sufficient to support a WVROA petition.  The trial court concluded that "under the totality of the circumstances, including the law and facts known at the time," that Hanover's initial pursuit of the Petition

---

[3] L.K. asserts that she did not say "in her country she would be in her rights to kill her."  Appellant's Appendix at 61.  L.K. insists that she told the police officer that "'in my country I would be in my rights to sue her . . .' and that her pronunciation of 'sue' must have sounded like 'shoot' to the police officer" who then wrote in his report that she said "kill."  *Id.*

was not frivolous, unreasonable, or groundless, but that "[i]t soon became obvious that it was the child, and not [L.K.], who waved the butcher knife at [E.H.], and that [L.K.]'s statement to the police, even if not misinterpreted, was not directed at [E.H.] as a threat." Appellant's Appendix at 62. We cannot say the court erred in concluding that, at the time it became obvious that L.K.'s statement to the police was not directed at E.H. as a threat, the Petition became unsupportable by any good faith and rational argument, because the statutory requirement of a credible threat of violence was then lacking. I.C. § 34-26-6-6(1); *see also Wagler*, 980 N.E.2d at 383. Accordingly, we conclude that Hanover continued to litigate its claim after the claim clearly became frivolous, unreasonable, or groundless.

[14] We next review the trial court's decision to award attorney fees and any amount awarded for an abuse of discretion. As the trial court found and as we concluded above, the continued litigation of the Petition by Hanover after June 30, 2014 was frivolous, unreasonable, or groundless, and, therefore, it was within the trial court's discretion, pursuant to Ind. Code § 34-52-1-1(b)(2), to enter an award of attorney fees to L.K. However, we find that the amount awarded by the trial court clearly contravenes the logic and effect of the facts and circumstances presented to the trial court on the basis that "[a]n award of attorney fees is appropriately limited to those fees incurred because of the basis underlying the award." *Brant v. Hester*, 569 N.E.2d 748, 755 (Ind. Ct. App. 1991). Here, the basis of the underlying award is that Hanover litigated the Petition, and L.K. was obliged to continue defending against the Petition,

after it became frivolous, unreasonable, or groundless to continue doing so. At the September 2, 2014 hearing, L.K. submitted a verified affidavit for costs and attorney fees revealing that she had incurred attorney fees on July 2, 2014, in the amount of $357.50, for legal research on the issue of bad faith and damages, and on July 18, 2014, in the amount of $68.75, for her counsel having received and reviewed Hanover's motion to dismiss, calling Hanover's counsel, and leaving him a message. All other fees incurred by L.K. after June 30, 2014, the date on which the Petition became unsupportable, were incurred not in defending against the Petition, but in objecting to Hanover's motion to dismiss the Petition. Accordingly, we conclude that the trial court abused its discretion by awarding attorney fees to L.K. not related to defending against the Petition after it became frivolous, unreasonable, or groundless, and we revise the fee award to $426.25.

[15]     Finally, L.K. alleges a number of errors in the Petition, including that Hanover failed to attach an affidavit alleging personal knowledge of L.K.'s purported threat as required by Ind. Code § 34-26-6-7, that Hanover failed to provide a statement "describing 'what happened'" as required by State Form TCM-WV-101, Appellee's Brief at 11, that Hanover made a false statement in the Petition when it misquoted L.K.'s purported threat, and that Hanover "did not complete the attorney certification section of the state prescribed form petition regarding notice to L.K. and failed to comply with the related provisions of Trial Rule 65(B)." *Id.* at 12. L.K. asserts that, as a consequence

of such errors, the court abused its discretion in limiting its consideration of her request for attorney fees to the period after June 30, 2014.

[16] We observe that the issue of whether the court's initial decision to enter an order granting a temporary restraining order based on the Petition was error is not presented to this court. The appealed order concerns only the award of attorney fees in favor of L.K. However, even if L.K. is correct that those various technical errors were present when the court initially granted Hanover a temporary restraining order, we cannot say that such errors lead to the conclusion that the allegations contained in the Petition had no merit and that such litigation was frivolous, unreasonable, or groundless. Therefore, we cannot say that the trial court abused its discretion by limiting its award of attorney fees to L.K. for those fees incurred only after June 30, 2014.

### *Conclusion*

[17] For the foregoing reasons, we affirm the trial court's award of attorney fees to L.K. and remand with instructions to enter an award of attorney fees in the amount of $426.25.

[18] Affirmed in part and remanded

Crone, J., and Pyle, J., concur.