JAMES O. KING, A/K/A ELDER *v.* STATE OF INDIANA.

[No. 2-772A39. Filed March 1, 1973. Rehearing denied March 28, 1973.]

*Robert E. Hughes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

SULLIVAN, J.—Defendant-appellant King was convicted in a trial without jury of an offense against property (IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns 1956)), and was sentenced to from one to ten years imprisonment.

The evidence most favorable to the State revealed that on

January 3, 1972, one Steven Dierdoff was in possession of a certain 1964 Chevrolet Corvair. The car was registered in the name of Dierdoff's grandfather, recently deceased. Dierdoff testified that the car had been in his possession for two or three months and that he was the owner thereof.

At 7:00 P.M. on January 3, Dierdoff parked the Corvair in the parking lot of Marion County General Hospital. Upon returning at 10:00 P.M., he discovered that the car was missing. Dierdoff made a complaint to the Indianapolis Police Department and furnished them with a description and license number of the missing car.

On January 14, 1972, Indianapolis Police Officer Edward Gnip, while on patrol, spotted defendant King seated behind the wheel of a Corvair, the description and license number of which Gnip recognized as being similar to the one reported as stolen. After investigation, Officer Gnip placed defendant under arrest for vehicle theft.

Upon trial, after presentation of the State's evidence, defense counsel moved for a discharge for the reason that ownership of the vehicle was not proved. The motion was overruled and the defense rested, presenting no evidence on defendant's behalf. The trial court adjudged defendant guilty and sentenced him to one to ten years imprisonment.

Although appellant's brief does not meet the requirements of AP. 8.3(A) (1), we consider the two issues argued by him:

1. Was there evidence of ownership sufficient to support the conviction?
2. Was certain testimony improperly admitted, thereby prejudicing defendant?

King's contention that the prosecution made an insufficient showing of ownership fails in the light of established Indiana law.

The Indiana Offenses Against Property Act defines an owner as:

"a person, other than the actor, who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the actor has no authority to obtain or exert the complained of control over the property." IC 1971, 35-17-5-13(12), Ind. Ann. Stat. § 10-3040(12) (Burns 1972 Supp.)

Our Supreme Court has agreed that under this definition, "even illegal possession would have been sufficient as long as possession had been established." *Gunder* v. *State* (1968), 250 Ind. 689, at 693, 283 N.E.2d 663.

Dierdoff's testimony established his possession. His testimony was unchallenged and uncontroverted, and fully supports a conclusion that Dierdoff was the "owner" for the purposes of the Offenses Against Property Act.

During the course of the trial, the following two exchanges took place between the prosecutor and a police officer testifying on behalf of the State:

"Q. Do you know of your own knowledge whether the car was in fact released?
A. I talked to ah . . .
Mr. Champion: Objection, Your Honor.
Court: You may say who you talked to but not what he said to you.
A. I contacted Dr. Dierdoff at General Hospital advising him that I had found his title and that I would zerox a copy of it and give the main title to him so that he could get his registration straightened out and have his vehicle registration proper . . . registered properly excuse me."

\* \* \*

"Q. Officer Gnip, do you see Mr. King or Mr. Elder in the Court room today?
A. Yes sir, he is known as both Mr. King and Mr. Elder.
Q. You said you had known him previously?
A. Yes we had arrested him approximately ten days before that.
Mr. Champion: Objection Your Honor.

Q. Let the record show that the witness had indicated the defendant James O. Elder in this case. Ah, what was done with the car Officer at this time?"

We note that defendant-appellant stated no reasons or grounds for his respective objections to the above-quoted evidence. Error, if any, in admitting such testimony is not properly before us. *Reed* v. *Trainor* (1968), 142 Ind. App. 192, 233 N.E.2d 685. In the light, however, of authority which does not require specific objection if the evidence itself plainly discloses the basis for objection, we deem it not wholly inappropriate to comment upon King's contentions. 2 *Wiltrout, Indiana Practice* § 1993 (1).

King objects at this level to the first quoted testimony as hearsay and as a legal conclusion on the part of the witness. It seems to us that it is neither. Nevertheless, we cannot see how this testimony prejudiced King. At the most, it constituted evidence of Dierdoff's ownership and as such was merely cumulative since as hereinbefore noted, ownership was sufficiently established by other testimony. *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621.

The second testimonial passage objected to by King could be viewed as a so-called "evidentiary harpoon."[1] While the record does not disclose the trial court's disposition of defendant's objection, it is our opinion that error, if any, was harmless.

Various factors may be considered in determining whether an apparent evidentiary harpoon has had irremedial effect upon a jury. Our Supreme Court in *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312, 314-315 noted:

---

1. The "evidentiary harpoon" may be generally defined as evidence calculated to prejudice unfairly the minds of jurors against a defendant. The weapon is intended to be lethal and is "willfully jabbed into the defendant and then jerked out by an admonition [virtually impossible to follow] to the jury not to consider the [evidence]." *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312, 316.

"Turning to other jurisdictions wherein the courts have considered the adequacy of striking improper testimony and admonishing the jury, as opposed to declaring a mistrial, we find that the following matters have been considered:

1. The effect of constitutional provisions, statutes or rules relating to harmless error.
2. The degree of materiality of the testimony.
3. Other evidence of guilt.
4. Other evidence tending to prove the same fact.
5. Other evidence that may cure the improper testimony.
6. Possible waiver by the injured party.
7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.
8. The penalty assessed.
9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.
10. The existence of other errors.
11. Whether the question of guilt is close or clear and compelling.
12. The standing and experience of the person giving the objectionable testimony.
13. Whether or not the objectionable testimony or misconduct was repeated."

We believe, however, that there is an even more compelling and a distinguishing consideration with respect to the cause before us. King was not tried by a jury but by the trial court sitting alone, and it has long been held in Indiana that harm arising from evidentiary error is lessened if not totally annulled when the trial is by the court sitting without a jury. *Shira* v. *State* (1918), 187 Ind. 441, 119 N.E. 833.

What might very well constitute prejudicial error in the form of testimony given before a jury does not necessarily constitute prejudicial error in a trial to the court. It must be remembered that a trial judge is presumed to know the intricacies and refinements of the rules

of evidence and that he sifts the evidence and weighs it in the light of his legal experience and expertise. He is thus able to separate the wheat from the chaff, ignoring the extraneous, the incompetent and the irrelevant and it is only when his judgment has apparently or obviously been infected by erroneously admitted evidence that we will set it aside. *Rule TR. 61.*

In a colloquy held at the time the court overruled King's Motion for Discharge, the trial court Judge orally reviewed the evidence. At that time he did not mention either of the above exchanges. There is no indication that he relied upon the testimony here considered in making his determination.

For the reasons hereinbefore assigned, the judgment is affirmed.

Buchanan, P.J. and White, J., concur.