**Alberto RUIZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0906–CR–356.

Court of Appeals of Indiana.

May 14, 2010.

Rehearing Denied July 20, 2010.

## OPINION

MAY, Judge.

Alberto Ruiz lived with his mother, his brother, and his brother's wife. In 2006, Ruiz's cousin and his cousin's wife began bringing their children to the home for day care. One of the children, K.P., was about five years old at that time. In 2008, K.P. told his mother Ruiz had molested him. K.P.'s parents contacted the police and Ruiz agreed to speak with a detective. Ruiz initially denied he had molested K.P. but eventually admitted to the detective he had placed his penis in K.P.'s mouth and had on multiple occasions touched K.P. in the area of his penis.

Ruiz's counsel wanted to present expert testimony by a clinical psychologist about coerced or false confessions. The State asked the court not to allow the witness to testify. The court excluded the witness on the grounds the testimony would not help the jury resolve any disputed facts, and would likely confuse the issues, mislead the jury, or unfairly prejudice the State.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

A few days before Ruiz was charged with two counts of child molesting, he was interviewed by a detective who was an experienced sex crimes investigator. Ruiz was twenty-six, had completed only the ninth grade, and had never been in trouble with the law. He initially denied molesting the victim, but eventually made incriminating admissions during the interview.

Ruiz's counsel wanted to present expert testimony by Dr. Jeffrey Vanderwater–Piercy concerning false or coerced confes-

John F. Crawford, Crawford & DeVane, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. We heard oral argument March 2, 2010, in Indianapolis. We commend counsel on the quality of their oral advocacy.

sions. The Doctor is a licensed clinical psychologist who had practiced for twenty years and had testified as an expert fifty times. However, he had never been qualified in any court as an expert on coerced confessions specifically.

At the time of the hearing on the admissibility of the testimony, the Doctor had not yet conducted any testing of Ruiz, but if his testimony were to be admissible, the Doctor would examine Ruiz to determine if he had any personality traits that would make him susceptible to police influence and whether the police interrogation was psychologically coercive. The Doctor had examined five other defendants for the possibility of false confession but had not found any evidence those confessions were coerced.

The court declined to allow the Doctor's testimony because although the Doctor "possesses extensive psychological knowledge and experience," (App. at 149), his testimony "would not assist the triers [sic] of fact in this case to understand scientific, technical or specialized evidence or to determine a fact in issue," (*id.* at 149–150), and it would "be likely to cause unfair prejudice, to confuse the issues or to mislead the jury."[2] (*Id.* at 150.)

## DISCUSSION

### 1. *Standard of Review*

■ Ind. Evidence Rule 702 allows for expert witness testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Evid. R. 702. Whether the proffered witness meets these requirements and, thus, whether the witness should be allowed to testify, is a decision within the discretion of the trial court. *Roach v. State*, 695 N.E.2d 934, 939 (Ind.1998), *reh'g*

*denied.* Thus, we review such decisions only for an abuse of discretion. *Id.*

Ruiz acknowledges this discretion, but notes exclusion of a defense witness may have the effect of depriving a defendant of his right to put on a defense. In *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), the Supreme Court addressed the tension between a defendant's right to put on a complete defense and evidence rules that permit the exclusion of evidence from criminal trials. It noted state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.

> This latitude, however, has limits. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.

*Id.* at 324, 126 S.Ct. 1727 (internal citations and quotations omitted).

So, it concluded, the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote," *id.* at 326, 126 S.Ct. 1727 but trial judges may exclude evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.*

---

**2.** Ruiz ultimately had a bench trial, not a jury trial.

The *Holmes* court noted "illustrations" of rules that were "arbitrary" because they "excluded important defense evidence but . . . did not serve any legitimate interests." *Id.* at 325, 126 S.Ct. 1727. One such "arbitrary" rule was held unconstitutional in *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), where Crane was prevented from attempting to show at trial that his confession was unreliable because of the circumstances under which it was obtained. The prosecution did not offer "any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence." *Id.* at 691, 106 S.Ct. 2142. *And see Miller v. State*, 770 N.E.2d 763, 774 (Ind.2002) (holding Miller was deprived of the opportunity to present a defense when the court excluded in its entirety proffered expert testimony about the psychology of police interrogation and interrogation of mentally retarded persons).

■ Ruiz's trial court excluded the Doctor's testimony based on factors noted in *Holmes*: "unfair prejudice, confusion of the issues, or potential to mislead the jury." 547 U.S. at 324, 126 S.Ct. 1727; (App. at 149–50). Those generally valid considerations simply cannot justify exclusion when Ruiz's trial was to the bench,[3] because harm arising from evidentiary error is lessened if not totally annulled when the trial is by the court sitting without a jury. *See King v. State*, 155 Ind.App. 361, 366, 292 N.E.2d 843, 846 (1973).

> What might very well constitute prejudicial error in the form of testimony given before a jury does not necessarily constitute prejudicial error in a trial to the court. It must be remembered that a trial judge is presumed to know the intricacies and refinements of the rules of evidence and that he sifts the evidence and weighs it in the light of his legal experience and expertise. He is thus able to separate the wheat from the chaff, ignoring the extraneous, the incompetent and the irrelevant and it is only when his judgment has apparently or obviously been infected by erroneously admitted evidence that we will set it aside.

*Id.* at 366–67, 292 N.E.2d at 846–47. Thus, the reasons cited by the trial court did not justify excluding the Doctor's testimony at Ruiz's bench trial.

■ Nevertheless, we may not reverse because Ruiz has not demonstrated he was prejudiced by the court's error. As the State notes, the Doctor's testimony would not have been helpful: because the Doctor had not met with Ruiz before the hearing on whether the Doctor could testify, "his opinion would have been speculative at best, and thus unhelpful to the trier of fact." (Br. of Appellee at 9.)[4] At the

---

3. We decline the State's invitation to hold Ruiz's evidence was properly excluded on the ground it would likely cause unfair prejudice, confuse the issues, or mislead the trier of fact, when Ruiz's trier of fact was a judge. *See, e.g., Berry v. State*, 725 N.E.2d 939, 943 (Ind. Ct.App.2000); *Helton v. State*, 624 N.E.2d 499, 513 (Ind.Ct.App.1993), *trans. denied, cert. denied* 520 U.S. 1119, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997) (erroneous admission of evidence harmless in bench trial because judge presumed to know and apply law to relevant admissible facts).

4. The State argues any evidentiary error was harmless because there was enough evidence to support the conviction regardless of the Doctor's testimony. The State mischaracterizes some of the evidence on which it relies. It asserts: "Even Defendant's witness Josafina Ruiz stated that she had no reason to dispute details provided by Defendant himself to police—that he was home when K.P. was there, or that he was alone with K.P. in his room." (Br. of Appellee at 17.)

On cross examination, Josafina was asked, "So if [Ruiz] said that he was home when [K.P.] was there, do you have any reason to

hearing concerning the Doctor's testimony, the Doctor noted that to testify about false confessions he would need to assess Ruiz for traits that might make him vulnerable or susceptible to police influence and would need to review the police techniques used in Ruiz's interrogation. He had done neither at the time of the hearing nor did he do so thereafter. At trial, Ruiz asked the court to

> reconsider its ruling denying our use of Dr. Vanderwater–Piercy, an expert psychologist who is going to testify as to the various techniques that are used by police interpreters [sic] and also testify as to the personality types that are susceptible to police interrogation, and also give a description of our client's[5] personality type.

(Trial Tr. at 11) (footnote added).

In *Hall v. State*, 796 N.E.2d 388, 399 (Ind.Ct.App.2003), *trans. denied* 812 N.E.2d 792 (Ind.2004), we determined exclusion of expert testimony was error, but was harmless. Hall's expert, Dr. Bernstein, would have opined the cause of the victim's death was not as the State theorized. The trial court rejected the testimony because the witness: (1) did not see the victim's computerized tomography ("CT") scan, (2) did not see the victim's autopsy, (3) did not conduct autopsies himself, and (4) did not consider, or at least adequately explain, why other factors were not the cause of death. *Id.*

The State conceded that reviewing the radiology report of the CT scan, as Dr. Bernstein did, is more helpful to a physician than reviewing the CT scan itself and that an expert witness need not attend an autopsy to form an opinion as to the cause of a person's death. But the State asserted that because Dr. Bernstein did not see the victim and did not do autopsies, his opinion was "speculative." *Id.* To support that assertion, the State cited *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 237 (Ind.Ct.App.1999), *reh'g denied*, where ex-

dispute that?" The witness replied, "I don't have any reason *because he wasn't there.*" (Tr. at 868) (emphasis supplied). The witness was asked "if [Ruiz] said that he didn't always lock his room, do you have any reason to dispute that?" She answered, "No, I don't, *but if he left it open it was because the children were not at home*" (*Id.* at 87) (emphasis supplied). The prosecutor admonished the witness to answer questions with a yes or no. The witness was then asked "if [Ruiz] said that in 2006 and 2007 he was alone in his room with [K.P.], would you have a reason to dispute that? Yes or no?" The witness replied, "No. There was no reason." (*Id.*) We admonish the State to refrain from such mischaracterizations of witness testimony.

To support a harmless error argument, the State also points to Ruiz's confession. As the purpose for the Doctor's testimony was to undermine the validity of that confession, we decline to hold the exclusion was harmless because Ruiz confessed. As Ruiz notes, without his confession, the trier of fact would be left with only the testimony of the victim, who was seven at the time of trial. Ruiz charac-

terizes the victim's testimony as "very dubious," (Br. of Appellant at 15), because it was at times inconsistent with other evidence. Ruiz notes K.P.'s testimony that the molestation happened "every day," (Tr. at 20), and that Ruiz was there all day every day. Other testimony, from K.P.'s mother and a woman who lived with Ruiz, indicated Ruiz worked Monday through Friday and sometimes Saturday, and was not at the home all day. K.P. testified the acts occurred in the morning, but other evidence indicated Ruiz was not in the house in the morning. On the stand, K.P. testified the first time he told anyone of the molestation was "last night," (*id.* at 25), but his mother testified he made the report almost a year before he testified. "In sum, it was only Ruiz's confession that gave corroboration to an otherwise disjointed and confused statement by K.P." (Br. of Appellant at 15.)

5. As explained above, the Doctor apparently never met with Ruiz to assess him for traits that might make him vulnerable or susceptible to police influence.

clusion was justified by "bald assertions" of a witness concerning the effect of electromagnetic fields on the human body. The Runges' expert lacked "both a medical degree *and detailed knowledge of [the Runges] current medical conditions and past medical histories, which would form the critical factual basis for his expert opinions.*" *Id.* (emphasis added). Dr. Bernstein's offered testimony in *Hall*, by contrast, did not consist of "bald assertions." Dr. Bernstein testified his practice involved regularly reviewing the records of neurological and general trauma patients "similar to the records he examined for this case," 796 N.E.2d at 400, and thus we held it was an abuse of discretion to exclude his testimony.[6] *Id.*

As the Doctor in the case before us did not assess Ruiz for traits that might make him vulnerable or susceptible to police influence, and did not review the police techniques used in Ruiz's interrogation, his proffered opinion testimony was more like the "speculative" testimony in *Runge* and was not based on the records of the case like the testimony in *Hall.* As such, Ruiz has not demonstrated he was prejudiced by its exclusion. *And see Lytle v. Ford Motor Co.,* 814 N.E.2d 301, 314 (Ind.Ct. App.2004) (testimony properly excluded where seat belt expert made no effort to "measure the force, web tension, direction or rotation *that would occur in this type of accident*") (emphasis added), *reh'g denied, trans. denied* 831 N.E.2d 745 (Ind.2005).

### 2. *Appropriateness of Sentence*

■■ Ruiz was sentenced on Count I to thirty-five years, with thirty years executed and five years suspended to probation,

and on Count II to five years to be served concurrent with the sentence on Count I. The advisory sentence for Count I was thirty years. *See* Ind.Code § 35–50–2–4 (sentencing range for a class A felony is twenty to fifty years, with an advisory sentence of thirty years). The advisory sentence for Count II was four years. *See* Ind.Code § 35–50–2–6 (the sentencing range for a class C felony is two to eight years, with an advisory sentence of four years).

■■■ Indiana Appellate Rule 7(B) provides we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. We exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give it "due consideration" and because we appreciate the unique perspective a trial court brings to its sentencing decisions. *Stewart v. State,* 866 N.E.2d 858, 866 (Ind.Ct.App.2007). The defendant bears the burden of persuading us his sentence is inappropriate. *Washington v. State,* 902 N.E.2d 280, 292 (Ind.Ct.App.2009), *trans. denied* 915 N.E.2d 988 (Ind.2009).

■ We assess a trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Stokes v. State,* 908 N.E.2d 295, 304 (Ind.Ct.App.2009), *trans. denied* 919 N.E.2d 559 (Ind.2009). The trial court found Ruiz's "age to be due some slight mitigating weight," (Tr. at 153), and Ruiz

---

**6.** In *Hall,* the error limiting Dr. Bernstein's testimony was "sufficiently minor so as not to have affected Hall's substantial rights." 796 N.E.2d at 400. The victim's treating physician and the pathologist who performed the autopsy both testified the victim died as a result of multiple blunt force traumas. "In light of the concurring testimony of the physicians who treated [the victim] and performed his autopsy, it is unlikely that the jury would have found [the victim] died from a different cause." *Id.*

had no criminal history other than a driving offense. As aggravators it found Ruiz's victim was very young, Ruiz was a "trusted family member who engaged in a pattern of predation on his very young cousin," [7] (*id.*), and prior to trial Ruiz had violated his conditional release and had his bond revoked. That, the court said, indicated Ruiz "cannot and will not abide by the rules set forth by this court." (*Id.* at 154.)

Ruiz molested a member of his extended family, who was being brought for day care to the house where Ruiz lived with his brother and his brother's wife. That "violation of trust," (*id.* at 153), reflects poorly on Ruiz's character. Before these offenses, Ruiz led an otherwise law-abiding life, but we cannot find that this factor renders Ruiz's sentences inappropriate.

We cannot say Ruiz's sentences are inappropriate in light of his character and the nature of the offense. Therefore, we affirm the trial court.

Affirmed.

CRONE, J., and BROWN, J., concur.

---

7. The victim was the child of Ruiz's cousin.    (Tr. at 32.)