# FOR PUBLICATION



FILED
Oct 31 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY TIBBS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1210-CR-517 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1106-FA-40789

October 31, 2013

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Gary Tibbs appeals his convictions of two counts of Class A felony child molesting,[1] three counts of Class B felony child molesting,[2] one count of Class D felony intimidation,[3] and one count of Class D felony child solicitation.[4]  He claims the State committed prosecutorial misconduct when it commented during closing argument on the truthfulness of his testimony.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Between 2002 and 2011, Tibbs molested D.J. and his sister J.J., and solicited oral sex from a third child, T.W.  In early 2011, D.J., J.J., and T.W. told T.W.'s grandmother of various sexual acts Tibbs had forced, or attempted to force, the children to commit.  The next day the children were interviewed by police and examined by a pediatrician.

Based on those interviews and a search of Tibbs' home, the State charged Tibbs with three counts of Class A felony child molesting; four counts of Class B felony child molesting; one count of Class D felony intimidation, for allegedly threatening to kill J.J. if she reported the molestation; one count of Class D felony child solicitation, and one count of Class D felony dissemination of matter harmful to minors, for allegedly exposing his genitalia to T.W..[5]  Tibbs waived his right to a jury trial and the court heard evidence on August 10, 2012.

During trial, Tibbs claimed he could not have committed two counts of Class B felony

---

[1] Ind. Code § 35-42-4-3(b).
[2] Ind. Code § 35-2-4-3(a).
[3] Ind. Code § 35-45-2-1(b)(1).
[4] Ind. Code § 35-42-4-6(b).
[5] Ind. Code § 35-49-3-3(a).

child molesting against D.J. because he was "incarcerated at South Bend Correctional Facility[,]" (Tr. at 168), for the entire time alleged in those two counts, specifically between "November 21, 2002, and November 20, 2003[.]" (App. at 33.) On cross-examination, the State asked Tibbs if his juvenile record would indicate he was serving time at the South Bend Correctional Facility on the dates he alleged, and Tibbs indicated it would. The State introduced Tibbs' juvenile record into evidence, which record did not show Tibbs was incarcerated in South Bend. The State attempted to locate, but could not find in the Department of Correction online offender database, any information regarding Tibbs' alleged incarceration in South Bend.

> During closing argument, the State said:

> Can you take what the Defendant and his mother say to the bank? Absolutely not. The records that the Defendant agrees with contradict his own testimony. And even if you believe his testimony that he was in South Bend for a period of time, he was back in Indianapolis in 2003 and that's what he testified to. And he's provided this court with no documentation to show he was sent to the Department of Corrections [sic]. And his juvenile record does not show him being sent to the Department of Corrections [sic].

(Tr. at 186-87.) Tibbs did not object, but during his closing argument he asked the trial court to "hold up on [its] opinion until I go to South Bend and render – give us (unintelligible) and see if he in fact was in South Bend incarcerated." (*Id*. at 189.) The trial court denied Tibbs' request because Tibbs had rested his case. However, the trial court indicated it would entertain a motion to consider new evidence if the documentation was found. The trial court then found Tibbs guilty to of two counts of Class A felony child molesting, three counts of Class B felony child molesting, one count of Class D felony intimidation, and one count of

3

Class D felony child solicitation.

Tibbs did not file a motion to consider new evidence. His pre-sentence investigation (PSI) report indicated Tibbs was incarcerated from August 15, 2002, until approximately August 25, 2003, when Tibbs began a portion of his sentence on home detention. During sentencing, Tibbs argued the information in the PSI proved he could not have committed an offense between November 21, 2002, and November 20, 2003. However, the State noted Tibbs was released prior to the end of the charged date range and the date of the crime was not an element of the crime. The trial court sentenced Tibbs to an aggregate term of 83.5 years incarcerated.

## DISCUSSION AND DECISION

Tibbs argues the State committed prosecutorial misconduct when "the deputy prosecutor created the false impression that Tibbs was lying when he testified truthfully that he had been incarcerated during part of the time he was alleged to have molested D.J.[.]" (Br. of Appellant at 1.) In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Schmidt v. State*, 816 N.E.2d 925, 944 (Ind. Ct. App. 2004), *trans. denied*.

Tibbs' trial counsel did not object to the statements Tibbs now argues were prosecutorial misconduct. A claim of prosecutorial misconduct presented on appeal without a contemporaneous trial objection will not succeed unless the defendant establishes not only

4

prosecutorial misconduct but also the additional grounds for fundamental error. *Id*. For prosecutorial misconduct to be fundamental error, it must make a fair trial impossible or amount to clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Id*.

The mere fact that an alleged error implicates constitutional issues does not establish it was fundamental. *Id*. at 945. Our Indiana Supreme Court has emphasized the "extremely narrow" application of the fundamental error doctrine:

> To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. To be fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.

*Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (citations and quotations omitted).

However, this case was not tried before a jury, but instead was tried before the bench. "[I]n criminal bench trials, we presume that the court disregard[s] inadmissible testimony and render[s] its decision solely on the basis of relevant and probative evidence." *Griffin v. State*, 698 N.E.2d 1261, 1267 (Ind. Ct. App. 1998), *trans. denied*. Further, generally valid issues with regard to fundamental error such as "unfair prejudice, confusion of the issues, or potential to mislead the jury" are relevant only in jury trials. *Ruiz v. State*, 926 N.E.2d 532, 535 (Ind. Ct. App. 2010), *reh'g denied*.

We cannot say that the prosecutor's actions amounted to fundamental error. The comment was merely a comment upon the evidence, which is permitted during closing argument. *See Lopez v. State*, 527 N.E.2d 1119, 1127 (Ind. 1988) ("a prosecutor may

5

comment on the credibility of witnesses as long as the assertions are based on reasons which arise from the evidence.").  Accordingly, we affirm.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.